## NEW YORK SUPERIOR COURT.

### THE BANK OF TORONTO agt. WILLIAM B. HUNTER.

An *acceptor* of a bill of exchange for the *accommodation* of the drawer, is regarded in *law* as the *principal debtor*, as between him and a *bona fide* holder.

But as between the *acceptor* and the *drawer*, the acceptor stands in the relation of *surety* for the drawer, and his *equity* in relation to any *securities* belonging to the drawer held by the owner of the bill to secure its payment, is the same as it would be if his suretyship appeared on the face of the bill.

The surety (acceptor) is, therefore, in *equity* entitled, on payment of the bill, to be *subrogated* to the position of the owner of the bill, in respect to such securities.

Where the plaintiff, a *foreign corporation*, brought this action against an accommodation acceptor residing in our jurisdiction, and it appearing that the plaintiff held securities for the payment of the bill, lodged with it by the drawers, and that the drawers were insolvent,

*Held*, that the defendant might in his answer in the nature of a cross bill in equity, demand subrogation as to such securities, upon payment of the amount due the plaintiff; and that this relief could be granted, without-bringing in or making the drawers parties to the suit.

*New York Special Term, January*, 1860.

DEMURRER to answer. The plaintiff, a foreign corporation, brought this action against the defendant, as acceptor of a draft or bill of exchange, for $3,600. The draft was drawn by V. H. Tisdale & Co., to the order of E. F. Whittemore & Co., and the latter indorsed the same in blank, and duly delivered the same to the plaintiff. The answer set up that the draft was accepted by the defendant without any consideration, for the accommodation of V. H. Tisdale & Co., the drawers, (which the plaintiff well knew) and was a renewal of a like former draft for about $5000, under an agreement made with Tisdale & Co., and the plaintiff, that the original draft should be renewed from time to time upon the payment by Tisdale & Co. of ten per cent. of the amount thereof, at each renewal, and executing and delivering to the plaintiff certain mortgages on real estate as security for the payment thereof; which securities to the full amount and value of the draft for $5000, was executed

and delivered to the plaintiff, in pursuance of such agreement; that by several renewals under the agreement the amount had been reduced to the present amount of $3600; that the plaintiff continues to hold and possess the said securities, so delivered to them by Tisdale & Co., which are ample to secure and pay the sum now due the plaintiff; that the said Tisdale & Co. are insolvent and unable to pay the said acceptance; that the defendant has no recourse for the payment or security of the sum for which he is liable to the plaintiff, except the said mortgages and securities held by the plaintiff. The answer then avers that the plaintiff alleges and insists that it will hold said mortgages and securities for some other demand due to the plaintiff from Tisdale & Co., and that the plaintiff alleges that it will not transfer or surrender to the defendant the said mortgages and securities, upon payment by the defendant of the demand of the plaintiff in suit; that the defendant has offered to pay the said draft, with interest and costs, if the plaintiff will surrender and transfer to the defendant upon such payment, the mortgages and securities held by the plaintiff, which the plaintiff refuses to do. The defendant, on information and belief, alleges that the plaintiff holds other full and ample security for all the indebtedness to it from Tisdale & Co., not secured by the said draft, and for which the defendant is not in any manner liable. The defendant alleges that the plaintiff being a foreign corporation, created and doing business in the province of Canada, the defendant will be remediless under the laws of the state of New York, where the defendant resides, except by the aid and interposition of this court. The defendant, therefore, renews his said offer to the plaintiff, and is ready and willing to pay the plaintiff the said draft, with interest and costs, if the plaintiff, upon such payment, will surrender and transfer to the defendant the said mortgages and securities, and demands judgment for such transfer by the plaintiff, on such payment by him.

The plaintiff demurred to the answer, assigning cause: 1st, that it does not appear by the answer that the mortgages and securities therein mentioned were executed and delivered solely, or at all as security for the payment of said draft, or that the defendant was a party to the agreement in the answer mentioned, made between the drawers and the plaintiff, or that said securities have not since been hypothecated by the drawers for other claims or demands of the plaintiff; 2d, that it does not appear that the defendant, as acceptor of the draft, has paid the same; 3d, that the defendant has not tendered the amount of the draft, with interest; 4th, that it does not appear in or by said answer that the plaintiff is insolvent, or that there is any danger of the loss of said securities to the defendant if he shall at any time be legally entitled thereto; 5th, that it does not appear that the defendant accepted the draft as surety for the drawers thereof; 6th, that it does appear that the drawers are not parties to this action, and that their rights and interests in said securities cannot be adjudicated in this action; 7th, that the answer neither sets up any defence or counter-claim to the cause of action set forth in the complaint.

MATHEWS & SWAN, *attorneys*, and
OTIS D. SWAN, *counsel for plaintiff*.

*First.*—The allegations of the complaint not being denied by the defendant, he admits for the purposes of this action that the plaintiff is the *bona fide* holder for value of the bill, in the sense that protects plaintiff against any equities between the defendant and Tisdale & Co., the drawers of the bill, so far as payment is concerned.

I. As to effect of want of denial of substantive allegations of complaint, *vide Code of Procedure*, § 168; *Wood* agt. *Whiting*, 21 *Barb.*, 190.

II. The mere fact that the bill was accepted by defendant, for accommodation of the drawers, does not *per se* con-

.stitute any defence to this action. The contract of accept-ance was that the defendant would pay the bill to the *bona fide* holder, and this, too, whether the holder knew the acceptance was accommodation or not. (*Grant* agt. *Ellicott*, 7 *Wend.*, 227; *Charles* agt. *Marsden*, 1 *Taunt.*, 224.)

*Second.*—The defendant not only admits his liability as acceptor, but also as surety for the drawers of the bill, if it be admitted that the relationship of surety and principal debtor exists between defendant and the drawers of the bill; because

1. Defendant sets up by his answer no act on the part of plaintiff that impairs defendant's rights as such.

2. Defendant offers to pay the bill, as demanded in the complaint. (*Vide folios* 9 *and* 10 *of amended answer.*)

*Third.*—Assuming that the defendant stands in the posi-tion of surety for the payment of the bill, his answer sets up no defence to this action, for the following reasons:

1. The defendant does not seek to compel the plaintiff to resort to the securities, which it is alleged he holds, before prosecuting defendant. This might be done under special .circumstances, (*Hayes* agt. *Ward*, 4 *Johns. Ch.*, 123) but no such circumstances are alleged.

2. The defendant *does not allege payment*, or its *equiva-lent, tender of payment.* The surety is not entitled to be subrogated to the rights, remedies and securities of the creditor; to be substituted in the place of the creditor, and to have all the securities, original and collateral, which the creditor held against the person or property of the princi-pal debtor, transferred to him, *until he has paid the debt.* When the surety pays the debt of the principal debtor he shall stand in the place of the creditor. This is the prin-.ciple laid down in all the cases. (*Vide Parsons* agt. *Brad-dock*, 2 *Vern.*, 608; *King* agt. *Baldwin*, 2 *Johns. Ch.*, 555; *Wright* agt. *Morley*, 11 *Vesey*, 22; *Theobald, Principal & Sure-ty*, 117, 138; *Hayes* agt. *Ward*, 4 *Johns. Ch.*, 123; *Wilkes*

agt. *Harper*, 2 *Barb. Ch.*, 338 ; *Mathews* agt. *Aitkin*, 1 *Comst.* 595 ; *Lidderdale* agt. *Robinson*, 12 *Wheat.*, 594, 596.)

3. No tender of payment is alleged, and no facts are stated that constitute a waiver of tender. A mere offer to pay does not amount to a tender. ( *Chit. on Contracts, marg.*, *p.* 798 ; *Bakeman* agt. *Pooler*, 15 *Wend.*, 637.) The mere refusal to take money is not a sufficient waiver of showing and actually offering it to the creditor. ( *Slingerland* agt. *Morse*, 8 *Johns.*, 474.)

4. There is no allegation on the part of the defendant that he is in danger of losing the securities alleged to have been hypothecated with the plaintiff, or that plaintiff is insolvent.

*Fourth.*—The amended answer is defective in that, it does not seek to make Tisdale & Co., the drawers of the bill, parties to the action. No complete determination of the rights of the defendant, to the securities claimed by him, can be made without the joinder of the drawers, because,

1. The agreement, pursuant to which the securities are alleged to have been lodged with plaintiff, was between him and the drawers, Tisdale & Co. There was no privity between them and the defendant in respect to the hypothecation of the securities, or between defendant or plaintiff, in respect thereto. Hence the securities in question may have since become pledged by Tisdale & Co. for some other claim or demand of the plaintiff. After payment of the debt of the principal debtor, all that the defendant would be entitled to would be a subrogation to the rights, remedies and securities of the creditor, so far as the same apply to the debt paid, but no further. ( *Vide cases already cited.*)

*Fifth.*—By accepting the bill of exchange the defendant has imposed on himself voluntarily the obligations that attach by virtue of acceptance, and as there is nothing contrary to law or public policy in the obligation thus imposed, the defendant is not entitled to vary the legal effect of the instrument, either at law or equity, for the purpose of affecting the plaintiff with equities which can-

not arise where the party relying upon them appears on the face of the contract to have made himself answerable as principal and not as surety. (*Fluturer* agt. *Pocock*, 5 *Taunt.*, 551; *Montgomery* agt. *Walker*, 9 *S. & R.*, 229; *Murray* agt. *Judah*, 6 *Cowen*, 484; *Manley* agt. *Boycot*, 18 *Eng.*, *L. and* 5 *Eq. R.*, 351; *Sprigs* agt. *Mt. Pleasant Bank*, 10 *Peters*, 217; *Id.*, 14 *Peters*, 201.)

LEONARD & HOFFMAN, *attorneys*, and
WILLIAM H. LEONARD, *counsel for defendant.*

*First.*—In equity the defendant was surety merely, and the plaintiff knew it.

*Second.*—The right of the defendant to subrogation is, in equity, clear, and the plaintiff cannot divert the securities even with the consent of the drawers, so as to deprive defendant of indemnity.

*Third.*—No actual tender before suit brought was necessary. (*Cherry* agt. *Monro*, 2 *Barb. Ch. R.*, 618.)

By the court, WOODRUFF, Justice. Although at law the defendant is to be regarded as the principal debtor as between him and the plaintiff, yet, as between himself and Tisdale & Co., the drawers of the bills, he stands in the relation of surety for such drawers; and in respect of any securities belonging to the drawers, held by the plaintiff to secure the payment of the bills, his equity is the same as it would be if his suretyship appeared on the face of the bills.

If in ignorance that the defendant was a mere accommodation acceptor, the plaintiff has given any further credit to Tisdale & Co., in reliance on those securities, which should defeat the defendant's *prima facie* equitable right of subrogation, it will be for the plaintiff to set it up for that purpose; but taking the facts as they are stated in the answer, to be true, I think the defendant's right of subrogation to be clear; and as the principal debtors are insolvent, and the plaintiffs are a foreign corporation, coming

into our jurisdiction for the purpose of collecting the debt, and whom, if the defendant first pays the bill, he cannot reach by any process of our courts, he would, in respect of his right of subrogation, be remediless, if he might not by his answer, in the nature of a cross-bill in equity, assert and maintain his claim to affirmative relief, under sections 150 and 274 of the Code.

There is no well founded objection to the determination of all the rights of the parties, legal and equitable, in relation to the same subject matter in one suit; and as the right claimed by the defendant, to be subrogated to the position of the plaintiff, upon payment of the debt, for which in equity he is surety only, is, I think, clear, the demurrer of the plaintiff to his answer must be overruled, with costs, but with leave to the plaintiff to withdraw the demurrer and reply, if so advised, upon payment of the costs of the demurrer and proceedings thereon. (*Curtis* agt. *Tyler et al.* 9 *Paige R.*, 432; *Wilkes* agt. *Harper*, 2 *Barb. Ch. R.*, 338; *Mathews* agt. *Aitkin*, 1 *Comst. R.*, 595; *Pitts* agt. *Congdon*, 2 *Id.*, 354; *Eddy* agt. *Traver*, 6 *Paige R.* 521; *Cherry* agt. *Monro*, 2 *Barb. Ch. R.*, 118.)